UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
UNITED STATES OF AMERICA,            )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   Civil Action No. 11-01388 (RBW)
                                      )
BOLLINGER SHIPYARDS, INC., BOLLINGER  )
SHIPYARDS LOCKPORT, LLC, AND HALTER   )
BOLLINGER JOINT VENTURE, LLC,         )
                                      )
        Defendants.                   )
                                      )

## MEMORANDUM OPINION

This case arises from claims brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(B) (2006).  Complaint ("Compl.") ¶ 1.  The plaintiff asserts that the defendants, Bollinger Shipyards, Inc., Bollinger Shipyards Lockport, L.L.C., and Halter-Bollinger Joint Venture, L.L.C. ("Bollinger"), "knowingly misled" the United States Coast Guard "by falsifying data relating to the structural strength of" several Coast Guard vessels, which Bollinger had contracted to alter.  Id.  Currently before the Court is the Defendants' Motion to Transfer this action to the United States District Court for the Eastern District of Louisiana ("Defs.' Mot.") pursuant to 28 U.S.C. § 1404(a) (2012).[1]  For the following reasons, the Court grants the defendants' motion.

---

[1] In resolving this motion, the Court also considered the Defendants' Memorandum in Support of their Motion to Transfer ("Defs. Mem."), the United States' Response to Defendants' Motion to Transfer ("Pl.'s Opp'n") and the Defendants' Reply in Support of their Motion to Transfer ("Defs.' Reply").

## I. BACKGROUND

The plaintiff is the United States of America. The defendants, all principally located in Lockport, Louisiana, Compl. ¶¶ 3-5, supply products and services to the marine industry. Defs.' Mem. at 3. In 1999, the United States Coast Guard solicited bids from the private sector for the purpose of replacing "its fleet of water vessels, aircraft and electronic systems." Compl. ¶ 11. One contractor selected by the Coast Guard, Integrated Coast Guard Systems ("ICGS"), id. ¶ 12, subcontracted with the defendants to lengthen several Coast Guard vessels from 110 to 123 feet. Id. ¶ 13. The defendants had previously constructed the Coast Guard's existing 110-foot vessels. Id.

Beginning in 2000, the defendants prepared a series of structural calculations regarding the vessel lengthening project. Id. ¶¶ 16-17. Most, if not all, of the calculations and internal communications related to the structural integrity of the vessels were initiated from the defendants' headquarters in Lockport, Louisiana. See Defs.' Mem. at 2. Communications and claims for payment between the defendants and the Coast Guard were ultimately received at the Coast Guard's Program Office in Arlington, Virginia. Pl.'s Opp'n at 7. The defendants, who were subcontractors on the vessel lengthening project for first-tier subcontractor Northrop Grumman, delivered the first of the completed vessels to Northrop Grumman in 2004. Defs.' Mem. at 5; Compl. ¶ 34. Northrop Grumman then delivered the vessel to the Coast Guard in Lockport, Louisiana. Defs.' Mem. at 5. The defendants were paid in March 2004, and certified compliance with the contractual requirements in August 2004. Compl. ¶ 34.

On September 10, 2004, one of the Coast Guard vessels modified by the defendants suffered structural damage. Id. ¶ 36. A subsequent investigation into the cause of the damage revealed that the defendants' calculations concerning the "longitudinal strength of the [vessel's]

hull" had allegedly been overstated. Id. When efforts to remedy the problem proved unsuccessful, the remaining seven modified vessels delivered by the defendants were declared "unseaworthy and unusable" by the Coast Guard. Id. ¶¶ 1, 37.

The plaintiff's complaint claims that the defendants violated the False Claims Act when they "knowingly misled the Coast Guard . . . by falsifying data relat[ed] to the structural strength of the converted vessels." Id. ¶ 1. The plaintiff filed this action in this Court. Id. at 1. The defendants now request that the Court transfer this case to the United States District Court for the Eastern District of Louisiana, Defs.' Mot. at 1, contending that Louisiana is "the most appropriate venue" for the litigation of this case. Id. at 2. They note that all three defendants have their principal places of business in Lockport, Louisiana, and are registered to do business in Louisiana. Id. They further contend that the events that form the basis of this suit occurred in Louisiana. Id.

In its opposition, the plaintiff argues that the District of Columbia is an appropriate venue because the FCA allows claims to be brought in any forum in which any one defendant "'can be found, resides, [or] transacts business.'" Pl.'s Opp'n at 2 (quoting § 3732(a)). The plaintiff claims that Bollinger Shipyards, Inc., has an office in the District of Columbia, see id., Exhibit ("Ex.") 1 at 2 (Declaration of Commander James M. Kammel) (explaining that Marc Stanley, a Bollinger representative, routinely distributed business cards to Coast Guard personnel that cast him as a Bollinger Shipyards, Inc., executive with an office in the District of Columbia), and that Halter-Bollinger Joint Venture, L.L.C. transacted business from that office. See, e.g., id., Ex. 2 at 1 (Feb. 25, 2002 letter from Halter-Bollinger Joint Venture, L.L.C., to Ingalls Shipbuilding, Inc.) (listing the mailing address for Halter-Bollinger Joint Venture as 600 New Hampshire Ave. N.W., Suite 1000, Washington, D.C. 20037). In response, the defendants assert that the office in

the District of Columbia is "maintained by" an "independent consultant" and former Bollinger employee who played no role in the vessel lengthening project, and that "any submissions bearing Joint Venture letterhead . . . were made in Louisiana." Defs.' Reply at 14-15. Additionally, the plaintiff contends that granting the transfer would merely shift any inconvenience of having this case litigated in this Court from the defendants to the plaintiff. Pl.'s Opp'n at 4.

## II. STANDARD OF REVIEW

The FCA provides that any action under the FCA "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). However, 28 U.S.C. § 1404(a) provides that any civil action may be transferred to any other district where it might have been brought "for the convenience of parties and witnesses, in the interest of justice."

District courts have discretion to grant transfers under § 1404(a) according to an "individualized, case-by-case consideration of convenience and fairness." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transferring a case is proper. Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). Courts typically consider a number of private- and public-interest factors in determining whether transfer is warranted under §1404(a). Id. The private-interest factors include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses

4

may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

Id. (footnotes omitted).  The public-interest considerations include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."  Id. (footnotes omitted).

### III. LEGAL ANALYSIS

Before the Court determines the appropriateness of granting the transfer request, it must first decide whether this action could have been commenced in the Eastern District of Louisiana. See Van Dusen, 376 U.S. at 616 (noting that federal courts may only transfer civil actions pursuant to § 1404(a) to a jurisdiction in which the action might have been originally brought); Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 5 (D.D.C. 1996) (same).  Because the defendants are principally located in the Eastern District of Louisiana, and transact business there, the plaintiff unquestionably could have filed this case in that district under 31 U.S.C. § 3732.

Having concluded that this case could have been brought in the Eastern District of Louisiana, the Court must now determine whether transfer is warranted "for the convenience of parties and witnesses [and] in the interest of justice." § 1404(a).

A. Private-Interest Factors

1. The Plaintiff's Choice of Forum

Courts must normally afford deference to the plaintiff's choice of forum.  Trout Unlimited, 944 F. Supp. at 17.  However, that deference "is mitigated where the plaintiff's choice

of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" Id. (quoting Chung v. Chrysler Corp., 903 F. Supp. 160, 165 (D.D.C. 1995); see also Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled to only minimal consideration."); Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979) ("In weighing claims of convenience, the Court recognizes the diminished consideration accorded to a plaintiff's choice of forum where, as here, that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter."). Thus, when the plaintiff's choice of forum has "no factual nexus with the lawsuit . . . its choice of forum may be accorded less weight." Schmid Labs., Inc. v. Hartford Acc. & Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986).

      Here, the Coast Guard relies on the letterhead of one of the defendant companies and the business card of an independent consultant to establish the defendants' connection with the District of Columbia. See Pl.'s Opp'n at 2 (arguing that Halter-Bollinger Joint Venture, L.L.C., and Bollinger Shipyards, Inc., transacted business from 600 New Hampshire Avenue, N.W., Suite 1000, Washington, D.C.). As noted earlier, the defendants respond that the District of Columbia office is maintained by an independent consultant. While the office of an independent consultant in the District of Columbia may be sufficient to establish jurisdiction for a FCA claim, this District has little factual nexus with this lawsuit. The consultant in question rented an office in the District of Columbia, and did so in his own name and with his own money. Defs.' Reply at 14. Furthermore, the consultant's personal connection to this suit has not been established.

Similarly, significant deference to the plaintiff's choice of forum cannot be based on the fact that the Coast Guard's headquarters is located in the District of Columbia. A government agency's headquarters, without more, provides little basis for deferring to a party's choice of forum. See F.T.C. v. Cephalon, Inc., 551 F. Supp. 2d 21, 27 (D.D.C. 2008) ("To be sure, the FTC 'resides' in the District of Columbia in the sense that the agency's headquarters is located here. But beyond that, there is essentially no nexus between the District of Columbia and this controversy."). Accordingly, for these several reasons, the plaintiff's choice of forum is afforded minimal deference.

2. Where the claims arose

While there is little factual nexus between this litigation and this District, there is an overwhelming connection between this suit and the Eastern District of Louisiana. Most, if not all, of the conduct underlying the plaintiff's claim occurred in the Eastern District of Louisiana. The plaintiff concedes that the defendants designed, calculated and constructed the vessels in Lockport, Louisiana. Pl.'s Opp'n at 7. The plaintiff, nonetheless, argues that the FCA claims ripened upon the defendants' delivery of the misleading calculations and claims for payment, which occurred at the Coast Guard's Program Office in Arlington, Virginia. Id.

The FCA attaches liability to the claim for payment and not to the underlying activity. United States ex. rel. Totten v. Bombardier Corp., 286 F.3d 542, 551 (D.C. Cir. 2002); United States v. Intrados/Int'l Mgmt. Grp., 265 F. Supp. 2d 1, 6 (D.D.C. 2002). Accordingly, because the claims were concededly delivered to the Coast Guard's Program Office in Arlington, Virginia, this suit could also have been filed in the Eastern District of Virginia. However, where this action may have been filed for the purposes of the FCA and whether this Court should grant

the Motion to Transfer "in the interest of justice" are two different questions.[2] Even though the submissions for payment were formally submitted in Virginia, that link is insufficient to outweigh the overwhelming connection between Louisiana and this case. As stated above, all of the allegedly false statements and claims for payment originated in the Eastern District of Louisiana. On the other hand, none of the events that form the basis of this suit took place in the District of Columbia. As such, the where-claims-arose factor weighs heavily in favor of transfer and is the most compelling reason to grant the defendants' Motion to Transfer.

### 3. Convenience to the parties

When deciding motions to transfer, courts must be mindful to not simply shift convenience from one party to the other. See Westrick, 771 F. Supp. 2d at 48 (acknowledging that any litigation will be more expensive for some than others). Rather, an analysis of the convenience-to-the-parties factor weighs in favor of transfer when it leads to an overall increase in convenience for the parties. Id. There is insufficient information before this Court suggesting that granting the defendants' motion would result in an overall increase of convenience to the parties. While this District would be more convenient to the plaintiff, the Eastern District of Louisiana would be more convenient for the defendants. The defendants carry the burden of showing transfer is appropriate in considering convenience to the parties, and they have not satisfied that burden.

### 4. Convenience to the witnesses

---

[2] The plaintiff cites U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 771 F. Supp. 2d 42 (D.D.C. 2011) to support its proposition that because the pertinent filings were made in the Virginia and not Louisiana, the "where claims arose" factor does not weigh in favor of transfer. In Westrick, where Judge Richard W. Roberts held that transfer from this District to the Western District of Michigan was not warranted, the relevant events underlying the FCA suit occurred neither in Michigan nor in the District of Columbia. In this case, however, the parties agree that most of the events underlying the claim arose in the Eastern District of Louisiana.

8

The proper inquiry with respect to convenience of the witnesses is not whether certain witnesses may be located outside the plaintiff's or the defendants' chosen forum, but instead whether those witnesses would be unwilling to testify in the District of Columbia. F.T.C., 551 F. Supp. 2d at 28; see also FC Inv. Grp. LC v. Lichtenstein, 441 F. Supp. 2d 3, 14 (D.D.C. 2006) (noting mere inconvenience to the witnesses is not sufficient to warrant transfer because courts assume a witness will voluntarily appear to testify). The convenience-to-the-witnesses factor is sometimes given utmost importance in a court's analysis. See Am. Ctr. for Civil Justice v. Ambush, 794 F. Supp. 2d 123, 131 (D.D.C. 2011) ("Probably the most critical of these factors 'is the convenience of the witnesses.'" (quoting Rhee Bros., Inc. v. Seoul Shik Poom, Inc., 869 F. Supp. 31, 34 (D.D.C. 1994)).

While the defendants in this case have provided an extensive and detailed list of potential witnesses, they have not indicated whether any would be unwilling to testify in the District of Columbia. However, because the FCA provides parties with nationwide power to subpoena witnesses for trial, 31 U.S.C. § 3731(a), unwillingness to testify in this District is of less concern to the Court. The defendants have, however, referenced the high price associated with travel, lodging, meals and increased leave from work for witnesses if this case were tried in the District of Columbia. Defs.' Mem. at 12 n.8. Alternatively, the plaintiff offers only that "[t]he vast majority of Coast Guard personnel with responsibility for, and knowledge of, the [project] are located in or near Washington, D.C." Pl.'s Opp'n at 4; id., Ex. 1 at 3. Although the plaintiff lists several "potential witnesses" by job title that had knowledge of the vessel lengthening project, id. at 4, it fails to name potential witnesses and provide reasons for why their testimony will be necessary. Nor does the plaintiff raise significant hardships that would prevent it from calling witnesses in Louisiana, other than a general desire to "minimize the impact of this litigation upon

Coast Guard operations." Id. at 5. The level of specificity provided by the defendants, as opposed to the plaintiff, in describing the potential hardships for its witnesses is persuasive. Accordingly, the convenience-to-the-witnesses factor weighs slightly in favor of transfer.

### 5. Ease of access to sources of proof

This Court is not convinced that access to sources of proof will be a problem in this case if it remains in the District of Columbia. Therefore, this factor does not weigh in favor of transfer.

## B. Public-Interest Factors

### 1. Local interest in deciding local controversies at home

This public-interest factor weighs in favor of transfer in this case. Controversies should be resolved in the locale where they arise. O'Shea v. Int'l Broth. Of Teamsters, No. Civ. A. 04-0207(RBW), 2005 WL 486143, at *4 (D.D.C. Mar. 2, 2005); Kafack, 934 F. Supp. at 9. As detailed above, the defendants reside in Louisiana, conduct business in Louisiana, and are defending against allegations of improper conduct that occurred in Louisiana. Moreover, this suit is of great significance to the defendants and their business, and it will obviously have its greatest impact where the defendants' businesses are located. On the other hand, this District has virtually no interest in these claims, as the Coast Guard's headquarters is the only connection this case has with the District of Columbia.

### 2. The relative congestion of the courts' dockets

The congestion of the courts is also considered when analyzing a motion to transfer. The defendants have offered statistics showing that cases that go to trial are resolved more quickly in

the Eastern District of Louisiana than in this District.[3]  Defs.' Mem. at 16.  The plaintiff notes, however, that fewer than two percent of all federal cases are resolved by trial.  Pl.'s Opp'n at 6.  Both parties are correct.  In evaluating the congestion factor, another member of this Court also considered the familiarity of the court with the issues in the case.  See Westrick, 771 F. Supp. 2d. at 46-47 (noting the court's familiarity with the issues and the seven-year age of the case).  In Westrick, for instance, the court denied a motion for transfer to the District of Michigan given the seven-year period the case had been pending, and the "voluminous filings" that had already been made in this Court, some of which had already been decided in a related case, by the same judge.  Id.  This Court has no such history with this case, as this case was just filed on July 29, 2011.  Under these circumstances, the Eastern District of Louisiana would require no more time familiarizing itself with this case than would this Court, as the proceedings here are in their infancy.  See id. at 47 (choosing not to grant the Motion to Transfer because of the likely delay that would arise from the potential transferee court having to familiarize itself with new and complex issues that the court from which transfer was sought was already familiar).  The congestion-of-the-courts factor, therefore, weighs in favor of transfer.

### 3. The court's familiarity with the governing laws

Finally, the Court must analyze the transferee court's familiarity with the governing laws.  Because the main cause of action in this case arises under the FCA, and all federal courts are presumed familiar with the law governing federal statutes, this factor does not weigh either for or against transfer.  Id. at 46.

---

[3]  Civil cases resulting in trial in the District of Columbia are resolved in a median of 40.7 months compared to 18.6 months in the Eastern District of Louisiana. See U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated (Table C-5) (2010), available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/C05Sep10.pdf.

## IV. CONCLUSION

The defendants have adequately shown that the Eastern District of Louisiana is a more appropriate venue for this litigation than the District of Columbia. They have made this showing because of the Eastern District of Louisiana's relation to the underlying facts, the Eastern District of Louisiana's convenience to the witnesses the defendants will need to resolve this dispute, and the general need to settle disputes where they arise. Conversely, the plaintiff has offered few reasons as to why the District of Columbia is the most appropriate venue, other than the potential inconvenience of having to participate in this litigation elsewhere. Furthermore, any deference traditionally afforded to plaintiffs in their choice of forum is mitigated when that forum has little nexus to the controversy, as is the case here. Accordingly, because transferring this case to the Eastern District of Louisiana is proper and in the interest of justice, the defendants' motion is granted.[4]

**SO ORDERED** this  30th day of March, 2012.

REGGIE B. WALTON<br>United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.